UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:19-cv-519 (LO/TCB) |
| | ) |
| JOHN DOE, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

THIS MATTER is before the Court on Plaintiff Malibu Media LLC's ("Plaintiff") Motion for Entry of Default Judgment Against Defendant Bob Rhyne a/k/a Robert Rhyne (Dkt. 25).[1] For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that Plaintiff's Motion be granted.

I.   BACKGROUND

A.   **Procedural Posture**

Plaintiff filed this lawsuit on April 28, 2019, asserting claims under the United States Copyright Act of 1976 ("Copyright Act") against Defendant John Doe. (*See* Dkt. 1; Decker Decl. ¶ 2.) Plaintiff contemporaneously filed a Motion for Leave to Serve a Third-Party Subpoena Prior to a Rule 26(f) Conference, requesting the Court's authorization to serve discovery on Defendant John Doe's Internet Service Provider ("ISP") to learn the infringing party's identity.

---

[1] The relevant filings before the Court include Plaintiff's Amended Complaint ("Am. Compl.") (Dkt. 11); Plaintiff's Motion for Entry of Default Judgment Against Defendant Bob Rhyne a/k/a Robert Rhyne ("Mot. Default J.") (Dkt. 25); Plaintiff's Memorandum of Law in Support of Motion for Entry of Default Judgment Against Defendant Bob Rhyne a/k/a Robert Rhyne ("Mem. Supp.") (Dkt. 26); Declaration of John C. Decker, II, Esq. ("Decker Decl.") (Dkt. 26-2); and all attachments and exhibits submitted with those filings.

1

(Dkt. 4.) This Court granted Plaintiff's motion on April 29, 2019. (Dkt. 9.) Plaintiff thereafter issued a third-party subpoena to Defendant John Doe's ISP and identified the infringing party as Bob Rhyne a/k/a Robert Rhyne ("Rhyne"). (Mem. Supp. at 2; Decker Decl. ¶ 3.) Plaintiff filed an Amended Complaint on June 29, 2019, naming Rhyne as the defendant. (Dkt. 11; Decker Decl. ¶ 4.)

Rhyne failed to appear in this matter or respond in a timely manner. (Decker Decl. ¶ 6.) On October 2, 2019, Plaintiff requested the Clerk's entry of default as to Rhyne (Dkt. 23), and the Clerk entered default on October 3, 2019. (Dkt. 24; Decker Decl. ¶ 5.) Thereafter, Plaintiff filed the instant Motion and Memorandum in Support. (Dkts. 25-26.) At the hearing before the undersigned on October 18, 2019, Rhyne did not appear or respond in any way. The undersigned took this matter under advisement to issue this Report and Recommendation.

### B. Jurisdiction and Venue

Before the Court can render default judgment, it must have (1) subject-matter jurisdiction, (2) personal jurisdiction, and (3) proper venue. First, the undersigned finds that this Court has proper subject-matter jurisdiction. A federal district court has original jurisdiction in a civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Plaintiff brought this lawsuit under the Copyright Act, which is a federal statute. (Am. Compl. ¶ 1.) This Court therefore has federal question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331. Further, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1338(a), which gives federal courts original jurisdiction over any civil action arising under U.S. copyright law.

Second, the undersigned finds that this Court has personal jurisdiction over Rhyne. The inquiry for personal jurisdiction requires either specific jurisdiction "based on conduct connected

to the suit" or general jurisdiction based on "continuous and systematic" activities in the forum state. *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)). A court has general jurisdiction over an individual defendant who is domiciled in the forum state. *See Goodyear Dunlop Tires Operation, S.A. v. Brown*, 564 U.S. 915, 924 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.") Here, Rhyne is an individual defendant residing at 534 Merlins Lane in Herndon, Virginia. (Am. Compl. ¶ 9.) The Court can therefore infer that Rhyne is domiciled in Virginia. The undersigned therefore finds that this Court has general personal jurisdiction over Rhyne because he is domiciled in Virginia.

Third, for similar reasons, the undersigned finds that venue in this Court is proper. Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" and in a judicial district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)-(2). Here, Plaintiff alleges that venue is proper in the Eastern District of Virginia because (1) Rhyne resides in this judicial district and (2) a substantial part of the events or omissions giving rise to this lawsuit occurred here. (Am. Compl. ¶ 7.) Furthermore, venue is proper in copyright cases "in the district in which the defendant . . . resides or may be found." 28 U.S.C. § 1400(a). Because the undersigned finds that Rhyne resides in this district, venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and 28 U.S.C. § 1400(a).

### C. Service of Process

Before the Court can render default judgment, it must be satisfied that the defaulting party has been properly served. Pursuant to Federal Rule of Civil Procedure 4(e)(2)(A), a

plaintiff may serve an individual within a judicial district of the United States by delivering a copy of the summons and the complaint to the individual personally. Fed. R. Civ. P. 4(e)(2)(A). Further, under Virginia Code section 8.01-296(1), a party may affect service of process on a natural person by "delivering [process] in writing to the party in person." Va. Code Ann. § 8.01-296(1) (2019). Here, Plaintiff served Rhyne via personal service. (*See* Dkt. 21.) On September 10, 2019, Plaintiff's process server personally served Rhyne with a Summons and the Amended Complaint. (*See id.*) According to the process server's affidavit, she served Rhyne at 534 Merlins Lane, Herndon, Virginia 20170. (Dkt. 21-1.) The undersigned therefore finds that Plaintiff properly served Rhyne.

## II. Findings of Fact

Upon a full review of the pleadings and record in this case, the undersigned finds that Plaintiff has established the following facts. Plaintiff sued Rhyne to remedy "persistent" online infringement of its copyrighted works. (Am. Compl. ¶ 2.) Plaintiff is a limited liability company organized under California law, with its principal place of business in Westlake, California. (*Id.* ¶ 8.) It is the registered owner of copyrights for the four adult films at issue in this matter. (*See id.* ¶¶ 3, 22, Ex. B.) Defendant Rhyne is an individual living in Herndon, Virginia. (*Id.* ¶ 9.)

First, Plaintiff established that Rhyne downloaded, copied, and distributed its copyrighted works using the BitTorrent file-distribution network ("BitTorrent").[2] Plaintiff's

---

[2] It is helpful to provide a brief overview of BitTorrent. As Plaintiff's Amended Complaint explains, BitTorrent is a common peer-to-peer file-sharing system used for distributing large amounts of data (such as movie files). (Am. Compl. ¶ 10; Mem. Supp. at 4.) If a user wants to share a large file, the BitTorrent protocol can break that file into many smaller pieces, and the user can share those smaller file pieces instead of trying to share the larger digital file. (Am. Compl. ¶ 12; Mem. Supp. at 4.) When a receiving user receives the smaller file pieces, that user's BitTorrent software can reassemble the pieces so that the user can open and utilize the file. (Am. Compl. ¶ 13; Mem. Supp. at 4.)

4

investigator established a direct "TCP/IP connection" with Rhyne's IP address in Herndon, Virginia and downloaded one or more pieces of four larger digital media files. (*Id.* ¶¶ 17-19, Exs. A-B.) Plaintiff confirmed that each of those digital media files correlated to one of its copyrighted works. (*Id.* ¶¶ 19-20; Mem. Supp. at 5.) Plaintiff further verified that each digital media file downloaded from Rhyne's IP address contained a digital copy of a film that was identical—or at the least, "strikingly similar or substantially similar"—to Plaintiff's copyrighted works. (Am. Compl. ¶¶ 21, Exs. A-B.) This investigation demonstrated that Rhyne copied and distributed the "constituent elements" of Plaintiff's copyrighted works. (*Id.* ¶ 30; Mem. Supp. at 5.) Over time, Plaintiff also established through its investigation that Rhyne was a habitual infringer of its copyrighted works. (Am. Compl. ¶¶ 24-25.)

Second, Plaintiff established that Rhyne copied and distributed its copyrighted works without its permission or authorization. (*Id.* ¶ 31.) Plaintiff alleges that it never uploaded any of its content or digital media files to any BitTorrent user. (*Id.* ¶ 20.) Logically, Plaintiff could never have authorized Rhyne's BitTorrent distribution of its copyrighted works.

Third, Plaintiff demonstrates that Rhyne willfully and knowingly infringed on its copyrights within the meaning of the Copyright Act. (*Id.* ¶ 33; Mem. Supp. at 5-6; *see also* 17 U.S.C. § 504(c)(2).) Here, Rhyne obtained Plaintiff's adult films for free. (Mem. Supp. at 5.) Because one would normally have to pay to view Plaintiff's films, Rhyne obtaining the films for free evidences "intent to bypass legitimate means to obtain that film." (*Id.*) Further, Rhyne used BitTorrent software. (*See* Am. Compl. ¶¶ 10-21, 23-25.) Plaintiff explains that BitTorrent's main

---

In terms of tracking and identifying this activity, Plaintiff explains that each smaller piece of the file is assigned a unique cryptographic "hash value" to "ensure each piece is properly routed amongst BitTorrent users as they engage in file sharing." (Am. Compl. ¶¶ 14-15.) The entire, larger digital file also has a unique cryptographic hash value. (*Id.* ¶ 16.) Once an infringer downloads the file pieces comprising the entire digital file, the BitTorrent software uses the hash value to determine whether the file is complete and accurate. (*Id.*)

5

purpose is to share unlicensed content, and it is primarily used to infringe on copyrighted material. (*See* Mem. Supp. at 6.[3]) The undersigned can therefore infer Rhyne's intent to infringe on Plaintiff's copyrighted works within the meaning of the Copyright Act.

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

Plaintiff asserts claims of copyright infringement against Rhyne pursuant to the Copyright Act. (*See* Am. Compl. ¶ 1.) The Copyright Act provides that a copyright owner has exclusive rights to its copyrighted works. *See* 17 U.S.C. §§ 101, 106(1), (3)-(5), 501. In other words, the owner has the exclusive right to reproduce the works; distribute copies to the public by sale, rental, lease, lending, or other transfer of ownership; perform the works; or display the works. *See id.* § 106(1), (3)-(5). Anyone who violates the copyright owner's exclusive rights is considered an infringer. *See id.* §§ 106, 501(a). For a claim of copyright infringement, a plaintiff must show (1) its ownership of a valid copyright for the allegedly infringed material and (2)

---

[3] Plaintiff discusses a Princeton study finding that approximately 99% of all files in BitTorrent were infringing copyrights. (*See* Mem. Supp. at 6, Ex. C.)

"copying of constituent elements of the work that are original." *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (citation omitted). The undersigned will consider each element in turn.

### A. Plaintiff Owns Valid Copyrights.

First, Plaintiff has shown that it owns valid copyrights for the works at issue. Plaintiff alleges that it owns copyrights for the four adult films outlined in Exhibit B to the Amended Complaint. (*See* Am. Compl. ¶¶ 3, 22, 29, Ex. B.) Exhibit B includes an overview of these copyrights, including their respective registration numbers and their effective dates of registration. (*See id.*, Ex. B.)

### B. Rhyne Infringed on Plaintiff's Copyrights.

Second, Plaintiff alleges that it has actionable claims for direct copyright infringement against Rhyne based on his unauthorized use of BitTorrent to illegally download, reproduce, distribute, perform, and display Plaintiff's copyrighted works. (*See* Am. Compl. ¶¶ 28-33; Mem. Supp. at 4-5.)

The use of file-sharing software and protocols (such as BitTorrent) to download works and reproduce, distribute, display, or perform them without the copyright-holder's permission constitutes copyright infringement. *See, e.g., ME2 Prods. v. Mason*, No. 3:17-CV-00058, 2018 U.S. Dist. LEXIS 49985, at *2 (E.D. Va. Mar. 26, 2018) ("[T]he plaintiff pleads the elements of infringement by alleging that it owned a valid copyright, and that the defendant copied and distributed the copyrighted material through a BitTorrent network."). As outlined in more detail above, Rhyne downloaded, copied, and distributed Plaintiff's copyrighted works using BitTorrent. (*See, e.g.*, Am. Compl. ¶¶ 17-21.) Furthermore, Plaintiff verified that the downloaded files from Rhyne's IP address contained a digital copy of a film that was identical, or

alternatively, "strikingly similar or substantially similar," to Plaintiff's copyrighted works. (*Id.* ¶ 21, Exs. A-B.) Accordingly, the undersigned finds that Plaintiff has sufficiently plead a copyright infringement claim under the Copyright Act.

## IV. REQUESTED RELIEF

Plaintiff requests that the Court award (1) statutory damages under the Copyright Act, (2) its costs incurred in bringing this lawsuit, and (3) injunctive relief to prevent further infringement. (Mem. Supp. at 1.)

### A. Statutory Damages Under the Copyright Act

The Copyright Act allows a copyright owner to recover "an award of statutory damages for all infringements involved in the action." 17 U.S.C. § 504(a)(2), (c)(1). Should a copyright owner qualify for statutory damages, the Copyright Act affords the Court discretion in determining the proper amount of damages. *See EMI Apr. Music, Inc. v. White*, 618 F. Supp. 2d 497, 508 (E.D. Va. 2009). "[W]ith respect to any one work," statutory damages may total "a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Upon a finding of willful infringement, however, the Court "may increase the award of statutory damages to a sum of not more than $150,000" per infringement. *Id.* § 504(c)(2). Infringement is willful for enhanced statutory damages purposes "when a defendant acted with actual or constructive knowledge that his actions constituted infringement or recklessly disregarded a copyright holder's rights." *Tattoo Art, Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634, 649 (E.D. Va. 2011) (citing *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F. 3d 789, 799 (4th Cir. 2001)). It has long been established that for statutory damages to be "an effective sanction for enforcement of the copyright policy," they must be awarded "not merely [to] compel[] restitution of profit and reparation for injury but also . . . to discourage wrongful conduct." *F.W. Woolworth Co. v.*

*Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952); *see also Graduate Mgmt. Admission Council v. Raju*, 267 F. Supp. 2d 505, 511 (E.D. Va. 2003).

Here, Plaintiff plead in its Amended Complaint and further demonstrated in its Memorandum in Support of its Motion for Default Judgment that Rhyne willfully infringed on its copyrighted works. (*See* Am. Compl. ¶ 33; Mem. Supp. at 9-12.) Noting that the maximum possible statutory damages award would be $150,000.00 per infringement (of which there are four here), Plaintiff asks for a statutory damages award of $6,000.00 in total. [4] (Mem. Supp. at 10.) Considering Rhyne's willful infringement, the undersigned finds that Plaintiff's request for $6,000.00 is reasonable and will suffice to deter Rhyne's future copyright infringement.

**B.   Costs**

Plaintiff requests that the Court award the costs it incurred in bringing this action.[5] The Copyright Act authorizes courts to award "full costs" to successful plaintiffs. 17 U.S.C. § 505. Costs include reasonable out-of-pocket expenses the attorney incurred in pursuing legal services that would typically be charged to a fee-paying client. *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Courts routinely award costs to a successful plaintiff on default judgment, especially when the defendant committed willful copyright infringement. *See, e.g.*, *Malibu Media, LLC v. Redacted*, 2016 U.S. Dist. LEXIS 89165, at *14 (D. Md. July 11, 2016). Here, according to counsel's declaration, Plaintiff incurred $545.00 in costs. (Decker Decl. ¶ 8.) These costs include a statutory filing fee of $400.00, process service fees of $70.00, and ISP fees of $75.00. (*Id.*) The

---

[4] This total comprises damages of $1,500.00 per work, which is double the statutory minimum of $750.00 per work. *See* 17 U.S.C. § 504(c)(1). Similar statutory damages have been awarded in like cases. *See, e.g.*, *Malibu Media, LLC v. Flanagan*, No. 2:13-CV-5890, 2014 WL 2957701, at *10-11 (E.D. Pa. July 1, 2014) (awarding $1,500.00 per infringement); *Malibu Media, LLC v. Cowham*, 2014 WL 2453027, at *2 (N.D. Ind. June 2, 2014) (same).

[5] While the Copyright Act contemplates awarding reasonable attorneys' fees to the prevailing party, Plaintiff has only requested in its briefing that the Court award its costs. (*See* Mem. Supp. at 15-16.)

9

undersigned finds that Plaintiff's incurred costs are reasonable and recommends that Plaintiff be awarded $545.00.

### C. Injunctive Relief

Lastly, Plaintiff seeks injunctive relief. Specifically, Plaintiff asks that the Court order Rhyne to (1) cease from infringing on its copyrighted works and (2) permanently remove "the digital media files relating to Plaintiff's works" and the infringing copies of Plaintiff's works that Rhyne has on any computer within his possession, custody, or control. (Am. Compl. at 6; Mem. Supp. at 12.) The Copyright Act provides that a court may grant injunctive relief to prevent the infringement of copyrights. *See* 17 U.S.C. § 502(a) ("Any court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."). Additionally, the Copyright Act states that a court may, "[a]s part of a final judgment or decree," order the "destruction or other reasonable disposition of all copies . . . found to have been made or used in violation of the copyright owner's exclusive rights." *Id.* § 503(b). To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

    (1) that it has suffered an irreparable injury;
    (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
    (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
    (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

The undersigned determines that permanent injunctive relief is appropriate against Rhyne because the above four elements are satisfied here. First, Plaintiff has demonstrated that it has suffered—and will continue to suffer—irreparable harm. In copyright cases, "[i]rreparable injury

[can be] derive[d] from the nature of copyright violations, which deprive the copyright holder of intangible [and] exclusive rights." *Christopher Phelps*, 492 F.3d at 544. Here, the undersigned determined that Rhyne willfully infringed on Plaintiff's copyrighted works. Further, Plaintiff explains that Rhyne's conduct subjected its copyrighted works to "'viral' infringement"—meaning, the works have now spread over the internet "among innumerable other users." (Mem. Supp. at 13.) Because of BitTorrent technology and how it allows users to easily share digital files with each other, infringement of Plaintiff's works "can continue unabated in exponential fashion." (*Id.*) Ultimately, this makes monetary damages inadequate as Rhyne's conduct will continue to harm Plaintiff in the future absent an injunction. These findings therefore support a determination that Plaintiff has been irreparably harmed and that injunctive relief is appropriate.

Second, other remedies at law are inadequate to compensate Plaintiff. Despite effecting personal service on Rhyne, he failed to respond in any way to this lawsuit. This lack of an appropriate response demonstrates that there is a near certainty of continuing copyright infringement as outlined above. Furthermore, it shows that Rhyne is unlikely to cooperate with Plaintiff's requests absent the Court's issuance of injunctive relief.

Third, the only "hardship" Rhyne would suffer from a permanent injunction would be the requirement to follow clearly established copyright law. In other words, "the potential injury to [Rhyne] caused by an injunction merits little equitable consideration and is insufficient to outweigh the continued wrongful infringement." *Medias & Co. v. Ty, Inc.*, 106 F. Supp. 2d 1132, 1140 (D. Colo. 2000). The undersigned accordingly finds that this third factor easily weighs in favor of granting injunctive relief, as Plaintiff's hardships (including lost profit and infringement of its legal rights) far outweigh any purported hardship that Rhyne faces.

Finally, the public interest also favors an injunction. The public benefits from the judicial

enforcement of copyrights because it preserves their legal integrity and protection of creativity. *See EMI Apr. Music*, 618 F. Supp. 2d at 511. Furthermore, granting injunctive relief in this matter would do nothing to "disserve[]" the public. *See Christopher Phelps*, 492 F.3d at 543. Here, an injunction would enforce Plaintiff's legal rights and maintain the integrity of its copyrights. For these reasons, the undersigned finds that injunctive relief is appropriate and the best means to prevent future harm to Plaintiff due to Rhyne's continuing infringement and his failure to respond to this lawsuit.

## V. RECOMMENDATION

For the reasons stated above, the undersigned recommends that this Court enter default judgment against Rhyne. Specifically, the undersigned recommends that the Court award Plaintiff $6,545.00, which includes $6,000.00 in statutory damages under the Copyright Act and $545.00 in costs. The undersigned also recommends that the Court enter a permanent injunction requiring Rhyne to (1) cease infringing in any way on Plaintiff's copyrighted works by any method, distributing the works, or making the works available for distribution to the public (except pursuant to a lawful license or with express authority from Plaintiff); and (2) permanently remove and destroy all digital medial files relating to Plaintiff's works and the infringing copies of Plaintiff's works that he has on any computer, device, or any other physical medium within his possession, custody, or control.

## VI. N<small>OTICE</small>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

December 9, 2019
Alexandria, Virginia